UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SCOTT SWAYZE,

                        Plaintiff,

        – against –

THERESA LAFONTANT, NATASHA
LAFONTANT, JOHN DOES 1-10, *and*
ABC COMPANY 1-10,

                        Defendants.

**OPINION & ORDER**

21 Civ. 4867 (ER)

RAMOS, D.J.:

        Scott Swayze brought this action against Theresa LaFontant, Natasha LaFontant, John

Does 1-10 and ABC Company 1-10, seeking monetary damages for personal injuries he

sustained after being attacked by a pitbull on June 15, 2018.  Doc. 1.  Pending before the Court is

Natasha LaFontant's motion to dismiss based on lack of personal jurisdiction and insufficient

service of process, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5), as well as

Swayze's cross-motion for an extension of time to serve Natasha and to amend to include the

dog's owner, Greg LaFontant, as a defendant.  Doc. 41; Doc. 44.  For the reasons set forth

below, Natasha's motion to dismiss is DENIED, Swayze's motion for an extension of time to

serve Natasha is GRANTED and his motion to amend to add Greg is DENIED.

   I.        BACKGROUND

        The claims arise out of an incident that occurred on June 15, 2018, while Swayze was on

Theresa LaFontant's property on Mirror Lake Road, in Spring Valley, New York.  Doc. 1 at 2 ¶

2.  Swayze was employed by American Honda as a Honda Recall Specialist, and was called to

the property to repair a vehicle for Theresa.  *Id*.  While on the property, Swayze was suddenly

attacked by a pitbull dog owned (at least in part) by defendant Theresa's daughter-in-law,

Natasha LaFontant, Doc. 40 ¶ 3 (Natasha's declaration in support of her motion to dismiss

referring to the pitbull as "my dog"), which led to severe physical and permanent injuries.  Doc.

1 at 2 ¶ 2.

Swayze's attorneys sent "numerous" letters to Natasha at the Mirror Lake Road property

in mid-2018 and July 2019, none of which were returned, including a letter sent certified mail on

July 15, 2019 for which they received a signed receipt.[1]  Doc. 44-2 ¶ 5; Doc. 44-5.  They also

conducted a search on Westlaw that showed she resided there.  Doc. 44-2 ¶ 4.  On July 31, 2019

and March 19, 2020, Theresa's insurer, State Farm, also communicated with Swayze's attorney's

office about the case and referenced the Mirror Lake Road property, though these documents

only mentioned Theresa by name, not Natasha.  *Id*. ¶ 6; Doc. 42 at 3; Doc. 44-7; Doc. 44-8.

Swayze filed his initial complaint on June 12, 2020, approximately two years after the

incident, in the United States District Court for the District of New Jersey, suing Natasha,

Theresa, and other John Does defined as the owners of the dog.  Doc. 1.  On February 3, 2021,

he filed a letter with Magistrate Judge Michael A. Hammer stating that the defendants had not

filed an Answer in the matter; the letter did not indicate whether the defendants had been served.

Doc. 10.  Thereafter, on April 13, 2021, a conference was held in front of the magistrate judge in

which Swayze described difficulties he was facing in serving Natasha—allegedly arising out of

the COVID-19 pandemic and because she was acting "elusively."  Doc. 42 at 4.  The magistrate

judge thus entered an order granting Swayze until May 4, 2021 to serve Natasha, or to seek

additional time to do so.  The Order said:

---

[1] The certified letter indicates that it was the "Fourth Notice" sent to her regarding identification of her insurance provider.  Doc. 44-5.

> As discussed at the April 13, 2021 Rule 16 conference, by May 4, 2021, if Defendant Theresa LaFontant has not agreed to waive service of process, Plaintiff will have effected service of process on her and filed proof of same.  Plaintiff will also effect service of process on Natasha LaFontant or seek additional time to do so if necessary.  Additionally, it appearing that venue is not appropriate in this district under 28 U.S.C. sec. 1391(b), any consent order to transfer this case to the Southern District of New York shall be filed by May 4, 2021, or the Court will enter a scheduling order in this matter.  So Ordered by Magistrate Judge Michael A. Hammer on 4/13/2021.

Doc. 14.  On April 28, 2021, Swayze purported to serve Natasha by leaving a copy of the summons and complaint with her co-defendant, Theresa, at the Mirror Lake Road property, which he believed was Natasha's place of residence, too, because of the aforementioned communications with her there.[2]  Doc. 41 at 4; Doc. 42 at 7.  Magistrate Judge Hammer then ordered the case transferred to this District on May 17, 2021.  Doc. 20.  On November 9, 2021, a post-transfer conference was held in this Court regarding case management and scheduling. Later, on November 21, 2021 — more than 17 months after he filed suit — Swayze filed a Freedom of Information Law (FOIL) request to learn the identity of the record owner of the dog. Doc. 44-1 at 5.  The request revealed that the dog was owned by Greg LaFontant, Theresa's son and Natasha's husband.  *Id*.

On February 23, 2022, Natasha LaFontant filed the instant motion to dismiss based on lack of personal jurisdiction due to insufficient service of process, pursuant to Federal Rules of Civil procedure 12(b)(2) and 12(b)(5).  Doc. 38.  On March 4, 2022, Swayze filed a motion to amend to add Greg LaFontant, pursuant to Federal Rules of Civil Procedure 15(a)(2) and 21, and for an extension of time to serve Natasha, pursuant to Federal Rule of Civil Procedure 6(b).  Doc. 44.

---

[2] Natasha never responded to any correspondence sent to her at the Spring Valley address.  Doc. 44-2 ¶ 5.

## II.   DISCUSSION

### A. Insufficient Service

#### 1.  Legal Standard

Under Rule 12(b)(5), a case may be dismissed upon a finding that defendants have not been adequately served with process.  If a defendant challenges service, the plaintiff bears the burden of proof to establish its adequacy.  *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010); *see also DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010).  A court may look to materials outside the complaint to determine the sufficiency of process and whether it has jurisdiction.  *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003). Upon a finding that service has not been completed or is otherwise insufficient, courts have discretion to dismiss the case or simply quash the faulty service.  *Hilaturas Miel, S.L. v. Republic of Iraq*, 573 F. Supp. 2d 781, 796 (S.D.N.Y. 2008) (citing *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985)).

To evaluate a 12(b)(5) motion, courts look to Rule 4, which governs service of process. Relevant here, Rule 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—
> on motion or on its own after notice to the plaintiff—must dismiss the action
> without prejudice against that defendant or order that service be made within a
> specified time.  But if the plaintiff shows good cause for the failure, the court must
> extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  The Second Circuit has held that Rule 4 should be construed liberally "to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice."  *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986) (internal quotation marks and citation omitted).  Incomplete or improper service may lead a court to dismiss an action "unless it appears that proper service may still be obtained."  *Id*. (internal

quotation marks and citation omitted).  Thus, a court may dismiss an action when it appears that

"there is simply no reasonably conceivable means of acquiring jurisdiction over the person of the

defendant."  *Id*. (quoting *Stanga v. McCormick Shipping Corp*., 268 F.2d 544, 554 (5th Cir.

1959)).

### 2.  Analysis

#### a.  Timeliness of Service under Rule 4(m)

As a preliminary matter, Natasha's motion is premised on the notion that Swayze never

sought leave of the New Jersey district court to extend his time to serve Natasha.  Indeed, in a

footnote in her reply papers she asserts that it is "patently false" that Swayze was given this extra

time by the magistrate judge.  Doc. 45 at 5 n.1.  The Court disagrees.  Magistrate Judge

Hammer's April 13, 2021 order specifically provides that "by May 4, 2021 . . . Plaintiff will also

effect service of process on Natasha LaFontant or seek additional time to do so if necessary."

Doc. 14.  The only logical reading of the order is that Swayze sought and was granted an

extension to serve Natasha.  Swayze purported to serve Natasha on April 28, within the time

allowed by Magistrate Judge Hammer, albeit at Theresa's home in Spring Valley.  *See generally*

*Kalra v. City of New York*, No. 05 Civ. 1563 (RJS) (JCF), 2009 WL 857391 (S.D.N.Y. Mar. 31,

2009) (upholding a magistrate judge's order extending the time period for service of process).

#### b.  Improper Service under Rule 4(e)

Having decided that Magistrate Judge Hammer granted Swayze an extension to serve

Natasha, the Court must answer two further questions:  first, whether Swayze properly served

Natasha, and second, if not, whether Swayze has shown good cause to be granted a further

extension.  The Court answers the first question in the negative.  Service was insufficient

because Natasha was not served at her actual dwelling.  Pursuant to Rule 4(e), service may be

made either personally or by leaving a copy of the service and summons "at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed R. Civ. P. 4(e)(2)(B).  Here, though Natasha used to reside at the Mirror Lake Road Property, Doc 41 at 6–9, it appears beyond dispute that she no longer lived there at the time she was served.  Her New York State driver's license, bank account records, and communications with her insurance company each reflect that she lives in Pomona, a nearby town also in Rockland County.  *Id*. at 8; *see also Wilmington PT Corp. v. Parker*, No. 19 Civ. 2380 (DRH) (AKT), 2021 WL 4122992 (E.D.N.Y. Sept. 9, 2021) (finding these sorts of documents sufficient to indicate residence).

Even if, as Swayze claims, his mistake was reasonable, he cites no case (nor did this court find any) for the proposition that service at the wrong dwelling, even if the mistake is reasonable, can still satisfy Rule 4(e).  Doc. 42 at 7.  Thus, even assuming plaintiff's belief that Natasha lived at the Mirror Lake Road Property was reasonable, it is insufficient, and so Rule 4(e)(2)(B) was not satisfied.

### c.   Further Discretionary Extension is Granted

Although Swayze's service was insufficient, proper service can still be effectuated, so the Court will deny Natasha's motion to dismiss and will grant Swayze a further extension of time to serve Natasha.  *See Rana v. Islam*, 305 F.R.D. 53, 65 (2015) (denying a motion to dismiss after improper service under Rule 4(e) because proper service could still be effectuated).  The Second Circuit has allowed more liberal constructions of Rule 4 when the defendant has received actual notice.  *See Romandette*, 807 F.2d at 311.  To that end, regardless of whether service was initially proper or whether good cause is found, the Court may still grant an extension of time given to a plaintiff to serve the defendant in its discretion.  Courts may grant such extensions

6

"after considering four factors," as allowed by Rule 6(b):  (1) whether the statute of limitations

would bar the action once refiled; (2) whether defendants had actual notice of the claims asserted

in the complaint; (3) whether defendants attempted to conceal the defect in service; and (4)

whether defendants would be prejudiced by extending plaintiff's time for service.  *Toussaint v.*

*City of New York*, No. 19 Civ. 1239 (AT), 2021 WL 4429316, at *3 (S.D.N.Y. Sept. 27, 2021).

The first factor is undoubtedly met — the statute of limitations for a dog bite in New York is

three years, and this incident occurred in 2018 — and this lack of recourse counsels an extension,

though it is true that Swayze was not aware of his mistake until long after the complaint was

filed.  N.Y. C.P.L.R. § 214(5); Doc. 44-1 at 10–11; Doc. 45 at 7.  *See also Phillips v. City of New*

*York*, 304 F.Supp.3d 305, 311 (E.D.N.Y. 2018) ("[t]he three-year statute of limitations of New

York CPLR 214(5) . . . governs general personal injury actions.").  The second factor is less

clear.  Factors outside the complaint, which the court may consider, see *Mende*, 269 F. Supp. 2d

at 251, suggest that Natasha had actual notice, such as the fact that her mother-in-law, who is a

named co-defendant in this case, received notice and was served, that this occurred at her former

home where members of her family still live, and that it was her dog who bit Swayze.  Doc. 44-1

at 3; Doc. 44-14.  Swayze also claims to have sent several mailings to her in Spring Valley that

were not returned, including a certified letter for which he received a signed receipt, which

creates a presumption of proper service.  *Hagner v. United States*, 285 U.S. 427, 430 (1932)

("proof that a letter properly directed was placed in a post office, creates a presumption that it

reached its destination in usual time and was actually received by the person to whom it was

addressed."); *see also Silva-Carvalho Lopes v. Gonzales*, 468 F.3d 81 (2d Cir. 2006) (finding an

even stronger presumption when certified mail was used, in the deportation proceedings context).

Natasha explicitly denies having actual notice, and has provided an affidavit that the signature on

the return receipt to the certified letter is not hers.  Doc. 46 ¶ 3.  While the latter two claims

appear to conflict, the Court need not make a credibility determination, because both may be

true; i.e., that Swayze sent the certified letter and received a signed receipt, but the receipt was

not signed by Natasha.  Instead, it finds that the totality of the circumstances suggests that

Natasha had actual notice of this suit.  The third factor is also met.  While Swayze states that

Natasha was "elusive," he appears to base this conclusion on the fact that he did not receive

responses to the various pieces of correspondence that he sent to her at the Mirror Lake Road

address.  Doc. 42 at 1.  But Natasha affirms that she did not even know about the suit and thus

was not avoiding it.  Doc. 46 ¶ 3.  Lastly, the fourth factor is satisfied; Natasha already has filed

papers in this case, is clearly aware it exists, and has retained counsel.  Doc. 34.  In all, an

extension addressed to the Court's discretion is appropriate.  Accordingly, an extension of one

month from the issuance of this decision will be granted to Swayze to properly serve Natasha.

## B.  Amendment

### 1.  Legal Standard

Under the Federal Rules, "a party may amend its pleading only with the

opposing party's written consent or the court's leave.  The court should freely give leave when

justice so requires."  Fed. R. Civ. P. 15(a)(2).  But a district court may deny a motion

to amend on the ground that the statute of limitations would bar the plaintiff's claim against the

defendant sought to be added.  *See Jennis v. Rood*, 310 F. App'x.  439, 440 (2d Cir. 2009) ("[t]he

district court reasonably concluded that the proposed amendment was futile since the statute of

limitations had run and the relation-back doctrine did not apply.").

## 2. Analysis

Swayze argues that he only learned about Greg LaFontant's involvement in the case after November 21, 2021, once Rockland County replied to his FOIL request. He also contends that pursuant to the liberal amendment standards of Rule 15, it is appropriate to allow Greg, the record owner of the dog who caused the injuries, to be added to the complaint. Doc. 44-1 at 11. The motion is denied. First, he waited until 17 months after filing his complaint to submit his FOIL request, and four months after that to file this motion. While the motion was filed only two weeks after the parties' initial conference with this Court on November 9, 2021, Swayze made no mention of seeking to find or add Greg as an additional party at that conference, and instead only asked for additional time to serve Natasha.

Second, Swayze's motion only cites to Federal Rules of Civil Procedure 15(a)(2) and 21, which do have a liberal amending standard, *id.*; however, because he seeks to add a new party past the expiration of the statute of limitations, the request is governed by Rule 15(c)(1)(C). *Berman v. Perez*, No. 17 Civ. 2757 (JGK), 2018 WL 565269, at *3 n.3 (S.D.N.Y. Jan. 24, 2018); *see also Kyle v. Amtrak*, No. 20 Civ. 5526 (NRB), 2022 WL 1471250, at *4 (S.D.N.Y. May 10, 2022) (applying Rule 15(c)(1)(C) to a motion to amend to add a new party after the statute of limitations had run). Rule 15(c)(1)(C) states that a new party can be added when the statute of limitations would otherwise bar suit if the claim against them arises out of the same transaction or occurrence and the new party (i) received notice such that they will not be prejudiced in their defense, and (ii) "knew or should have known" that the action would have been brought against them but for a mistake regarding their identity. Fed. R. Civ. P. 15(c)(1)(C)(i)–(ii). The second of these prongs is not met because the Second Circuit has declared that amending a complaint to

replace a John Doe with the newly-discovered name of a defendant is not a "mistake" regarding their identity and thus does not satisfy the Rule's language.

The Second Circuit states that "Rule 15(c) does not allow an amended complaint adding new defendants . . . if the newly-added defendants were not named originally because the plaintiff did not know their identities," and that replacing a John Doe who was named because the plaintiff did not know their identity with a named party is not a mistake, but a "change in the party sued," and therefore does not satisfy the relation back requirements. *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468–70 (2d Cir. 1995); *see also Cotto v. City of New York*, 803 F. App'x. 500 (2d Cir. 2020) (applying *Barrow*). In *Barrow*, the plaintiff attempted to sue John Doe police officers but did not find their names or file an amended complaint until after the statute of limitations had run. The court ruled that, since this amendment was simply "suppl[ying] information Barrow lacked at the outset" and not correcting a "formal defect such as a misnomer" as the Advisory Committee Notes suggested the Rule was meant to address, it did not satisfy Rule 15(c). *Barrow*, 66 F.3d at 469–70 (citing Fed. R. Civ. P. 15(c) advisory committee's note to 1991 amendment). In *Cotto*, the plaintiff sued a police officer John Doe for use of excessive force, then filed an amended complaint after the statute of limitations had expired. She "expended no efforts at all to identify the" John Doe before the statute of limitations had run and she had filed her amended complaint. *Cotto v. City of New York*, No. 15 Civ. 9123 (RWS), 2017 WL 3476045, at *6 (S.D.N.Y. Aug. 11, 2017), *aff'd,* 803 F. App'x. 500 (2d Cir. 2020) (citing *Williams v. United States*, No. 07 Civ. 3018 (RJS) (THK), 2010 WL 963474, at *13 (S.D.N.Y. Feb. 25, 2010), *report and recommendation adopted*, No. 07 Civ. 3018 ((RJS) (THK), 2010 WL 963465 (S.D.N.Y. Mar. 16, 2010)). The Court, following *Barrow*, denied her amendment.

This case is similar to *Cotto* in that the reason for which the newly-added defendant was not named originally is because Swayze did not know his identity.  As in *Cotto*, he made no effort to identify Greg before the statute of limitations had expired, choosing not to file the FOIL request until months after the statute of limitations had already run.  Doc. 1 at 3 ¶ 4; Doc. 44-14. This amendment is therefore clearly barred by this Circuit's interpretation of Rule 15(c)(1)(C).

Instead of arguing that Rule 15(c)(1)(C) is met, Swayze asserts that courts often grant these motions when there is a lack of prejudice, no undue delay and the amendment would not be futile.  Doc. 44-1 at 14; *Sanrio Co. v. Epic Trading, Inc.*, No. 2004-5428 (NG MDG), 2005 WL 1705746, at *1 (E.D.N.Y. July 21, 2005) (allowing two defendants to be added to a claim because it could be shown that they were liable for copyright infringement and therefore their claim was not futile).  To be clear, none of the cases to which Swayze cites concern the substitution of a newly-discovered defendant for a previously-named John Doe.  They are thus inapposite.  But even under Swayze's proposed analysis, leave to amend should not be granted.

Swayze suggests that it was only when he received this information in late 2021 that he could have amended the motion.  Defendants counter convincingly that no explanation is provided as to why the FOIL request was not made until November of 2021, over one year after the initial complaint was filed and more than five months after the expiration of the statute of limitations.  *See Chen v. Hunan Manor Enter.*, 437 F. Supp. 3d 361, 366 (S.D.N.Y. 2020) (denying addition of defendants under this more liberal analysis because of a delay in adding them to the suit for which there was "no explanation that would excuse" it); *State Farm Mut. Auto. Ins. Co. v. CPT Medical Services, P.C.*, 246 F.R.D. 143, 147 (requiring plaintiff to propose "persuasive reasons for its delay").

### III.    CONCLUSION

For the foregoing reasons, Natasha LaFontant's motion to dismiss for insufficient service is DENIED, Scott Swayze's motion for an extension of time to serve is GRANTED, and Scott Swayze's motion to amend to add Greg is DENIED.  The Clerk of the Court is respectfully directed to terminate the motions, Docs. 38 and 44.


It is SO ORDERED.


Dated:    June 21, 2022
            New York, New York

_____
                                    EDGARDO RAMOS, U.S.D.J.